UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEVIN BOIRE,                    )
                               )
            Plaintiff,         )
        v.                     )          CIVIL ACTION
                               )          NO. 10-11736-NMG
MICHAEL J. ASTRUE,             )
Commissioner of the            )
Social Security Administration, )
                               )
            Defendant.         )

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS REGARDING
## DENIAL OF SOCIAL SECURITY BENEFITS

January 23, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff Kevin Boire ("Boire") has brought this action, pursuant to sections 205(g)

and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), in order

to challenge the final decision of the Commissioner of the Social Security Administration

(the "Commissioner") denying his claim for Social Security Disability Insurance

("SSDI") and Supplemental Security Income ("SSI") benefits.  The matter is presently

before the court on the plaintiff's "Motion to Reverse or Remand the Decision of the

Commissioner of Social Security" (Docket No. 11), and on the "Defendant's Motion to

Affirm the Commissioner's Decision" (Docket No. 14).

The issue raised by the parties' motions is whether the Administrative Law Judge ("ALJ"), in reaching his decision that Boire was not disabled, erred by relying on the Medical-Vocational Guidelines, known as the "Grid," to conclude that there were a significant number of jobs in the national economy that Boire was capable of performing. Boire argues that because the ALJ found that the plaintiff suffers from moderate limitations in two areas of mental functioning as a result of his affective disorder, the ALJ was required to elicit the testimony of a vocational expert ("VE") in order to determine whether there was work that the plaintiff was able to perform. Thus, he contends that the ALJ erred as a matter of law by relying exclusively on the Grid to support his decision. The Commissioner argues the ALJ's reliance on the Grid was appropriate because Boire's non-exertional limitations did not significantly erode his ability to perform the full range of unskilled light work. Accordingly, the Commissioner asserts that the decision to deny Boire benefits should be affirmed.

As described below, this court finds that while the use of a VE was not necessarily required by the ALJ's finding that Boire suffered from non-exertional limitations at the moderate level, the ALJ nevertheless erred by failing to provide an adequate factual basis for his decision that no VE was needed and that reliance on the Grid was appropriate in Boire's case. This court further finds that as a result of this failure, the case should be remanded to the ALJ so that he may explain, with reference to the testimony of a VE or medical evidence, as appropriate, the relationship between Boire's mental capacity and the work that the ALJ concludes that Boire is capable of performing. Accordingly, and

for all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Commissioner's motion to affirm be DENIED, that the plaintiff's motion to reverse or remand be ALLOWED, and that the matter be remanded to the ALJ for further proceedings consistent with this Report and Recommendation.

## II.  STATEMENT OF FACTS[1]

Boire was born on December 4, 1960.  (Tr. 102).  He has a high school education, and completed one year of college.  (Tr. 30, 208).  Boire worked full time as a union carpenter from 1998 through 2006.  (Tr. 118).  He claims he stopped working as a result of constant back pain.  (Id.).

The record reveals that Boire has a history of depression and polysubstance abuse, and that he also suffers from a number of physical conditions, including but not limited to, chronic back pain, Hepatitis C and recurrent hernias.  (See, e.g., Tr. 273, 474-75, 563).  In March 2005, Boire suffered injuries when he was ejected from a car during an automobile accident.  (See Tr. 209, 273).  Later that year, in August 2005, Boire was injured at work when a nail from a nail gun was shot through his left elbow.  (See Tr. 209, 686).  Although he continued working as a carpenter until October 2006, Boire contends that the chronic nature of his impairments has since rendered him disabled. (Tr. 30).

## Procedural History

---

[1]  References to pages in the transcript of the record proceedings shall be cited as "Tr. __."  The ALJ's decision shall be cited as "Dec." and can be found beginning at Tr. 11.

Boire filed applications for SSI and SSDI benefits on June 2, 2008, claiming that he had been unable to work since June 1, 2007 due to depression and a back injury resulting from his 2005 automobile accident. (Tr. 102-12, 117). The plaintiff's applications were denied initially on September 3, 2008, and upon reconsideration on December 8, 2008. (Tr. 55-66).

The plaintiff subsequently requested and was granted a hearing before an ALJ. (Tr. 67-68, 75-01). The hearing took place on February 24, 2010 in Boston, Massachusetts. (Tr. 27-50). Boire, who was represented by a paralegal, appeared and testified at the hearing. (Tr. 27-50, 71). No other witnesses were called to testify. (Tr. 27-50). On March 19, 2010, the ALJ issued a decision denying the plaintiff's applications for benefits on the grounds that Boire "has not been under a disability, as defined in the Social Security Act, from June 1, 2007, through the date of this decision[.]" (Dec. Finding #11; Tr. 20).

The Decision Review Board selected Boire's claim for review, but did not complete its review within the time required. (Tr. 5-8). Consequently, the ALJ's decision became the final decision of the Commissioner for purposes of review. (Tr. 5). Thus, the plaintiff has exhausted all of his administrative remedies, and the case is ripe for review by this court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**The ALJ's Decision**

The ALJ concluded that from June 1, 2007 through the date of his decision on March 19, 2010, Boire had not been "under a disability within the meaning of the Social Security Act[,]" which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. 1; Tr. 11). See also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is no dispute that the ALJ, in reaching his decision, applied the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520 and 416.920. The procedure resulted in the following analysis, which is detailed in the ALJ's "Findings of Fact and Conclusions of Law." (See Dec. 3-10; Tr. 13-20).

The first inquiry in the five-step process is whether the claimant is "engaged in substantial gainful work activity[.]" Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). If so, the claimant is automatically considered not disabled and the application for benefits is denied. See id. In the instant case, the ALJ determined that Boire had not engaged in substantial work activity since June 1, 2007, the date of onset of his alleged disability, so the ALJ proceeded to the next step in the analysis. (Dec. Finding #2; Tr. 13).

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c),

416.920(c).  If not, the claimant is considered not disabled and the application for benefits is denied.  See Seavey, 276 F.3d at 5.  Here, the ALJ concluded that Boire suffered from several severe impairments, including disorder of the back, recurrent hernias, Hepatitis C, disorder of the left elbow, affective disorder, and a history of polysubstance dependence.  (Dec. Finding #3; Tr. 13).  Accordingly, he proceeded to step three.

The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations, in which case the claimant would automatically be found disabled.  See Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520(d), 416.920(d).  At this step, the ALJ concluded that Boire's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments.  (Dec. Finding #4; Tr. 14).  While the parties do not challenge this conclusion, as detailed below, they dispute the significance of ALJ's findings at this stage in the analysis that Boire had "moderate" limitations in two areas of mental functioning.

Significantly, in reaching his conclusion at step three, the ALJ considered whether Boire's mental impairments met or medically equaled the criteria of Listing 12.04 for affective disorders.  (Dec. 4; Tr. 14).  See also 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.  The ALJ recognized that in order to meet Listing 12.04,

> the [plaintiff's] mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation

means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

(Dec. 4; Tr. 14). The ALJ determined that Boire's limitations did not satisfy the applicable criteria. (Dec. 4-5; Tr. 14-15). In so finding, the ALJ concluded, in relevant part, that Boire had no limitations in daily activities as a result of his mental impairment, but that he did have "moderate" limitations in both the area of social functioning and the area of concentration, persistence or pace. (Dec. 5; Tr. 15).

As the ALJ explained, "[s]ocial functioning refers to an individual's capacity to interact independently, appropriately, effectively and on a sustained basis with other individuals" and "includes the ability to get along with others[.]" (Id.). The ALJ noted that Boire was living with his mother, visited with his brother, and stayed in touch with his adult child. (Id.). He also cited to evidence indicating that the plaintiff does not like being alone, and that he was able to interact appropriately with his medical providers. (Id.). On the other hand, the ALJ noted that Boire had been diagnosed with antisocial behavior, and that there was evidence that the plaintiff had been arrested forty-seven times, and had been incarcerated for about eighteen months, primarily on charges stemming from violence against others. (Id.). Based on this evidence, the ALJ found that "the claimant has moderate limitations in the area of social functioning." (Id.).

With respect to concentration, persistence or pace, the ALJ explained that this area of mental functioning "refers to the ability to sustain focused attention and concentration

-7-

sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." (Id.). The ALJ found that there was evidence showing that Boire was able to read, play cards, watch television, and perform "odd jobs." (Id.). Additionally, he found that the plaintiff was receiving cash assistance and food stamps, and that the plaintiff felt capable of managing funds. (Id.). However, the ALJ also credited Boire's testimony that he had trouble concentrating when he experienced a bad episode of depression. (Id.). He then concluded that "[t]he evidence in totality leads to a finding that the claimant has no more than moderate limitations in concentration, persistence or pace." (Id.).

The parties dispute whether the ALJ's determination that Boire had non-exertional limitations at the "moderate" level compelled the ALJ to elicit testimony from a VE at step five in the disability analysis rather than relying exclusively on the Grid. As detailed below, this court finds that while the existence of such non-exertional impairments does not necessarily require the use of a VE, the ALJ's failure to provide an adequate explanation for his conclusion that no VE testimony was needed in this case requires that the matter be remanded.

Because the ALJ determined that Boire's impairments did not meet or equal any of the listed impairments, he proceeded to step four in the evaluation process. The fourth inquiry is whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" Seavey, 276 F.3d at 5. It was at this stage of the analysis that the ALJ determined the plaintiff's residual functional capacity ("RFC").

In making his assessment regarding Boire's RFC, the ALJ noted that while the plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" his complaints as to the intensity, persistence and limiting effects of those symptoms were not entirely credible. (Dec. 6-7; Tr. 16-17). The ALJ then proceeded to review evidence from the record regarding both the plaintiff's physical and mental conditions. (See Dec. 7-9; Tr. 17-19). Although the ALJ's discussion included some citations to medical records relating to Boire's affective disorder, the ALJ did not address how those records, or other evidence in the record, related to Boire's limitations in social functioning and his ability to maintain attention and concentration.

Following his discussion of Boire's impairments, as well as consideration of the plaintiff's subjective complaints of pain, the ALJ concluded as follows with respect to the plaintiff's RFC:

> Based on the evidence discussed above, it is reasonable to conclude that the claimant is able to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[2] except that he is limited to unskilled work and should not have frequent interaction with the general public or co-workers based on his moderate limitations in the areas of social functioning and concentration, persistence or pace.

(Dec. 9; Tr. 19) (footnote added). Thus, after considering the combined effects of Boire's multiple impairments, as well as his "moderate" limitations in two areas of mental

---

[2] 20 C.F.R. §§ 404.1567(b) and 416.967(b) define "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

functioning, the ALJ concluded that the plaintiff retained the RFC to engage in light,

unskilled work, as long as he had limited interaction with co-workers and the public.

Based on his assessment of Boire's RFC, the ALJ found that the plaintiff was

unable to perform his past relevant work as a carpenter. (Dec. Finding #6; Tr. 19-20).

Consequently, the ALJ reached the fifth and last step in the sequential analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work

experience and age, the claimant is capable of performing other work. See Seavey, 276

F.3d at 5; 20 C.F.R. §§ 404.1520(g), 416.920(g). If so, the claimant is not disabled. 20

C.F.R. §§ 404.1520(g), 416.920(g). At step five, the Commissioner has the burden "of

coming forward with evidence of specific jobs in the national economy that the applicant

can still perform." Seavey, 276 F.3d at 5. Here, the ALJ determined, without relying on

the testimony of a VE, that

> [i]f the claimant had the residual functional capacity to perform the
> full range of light work, considering the claimant's age, education,
> and work experience, a finding of "not disabled" would be directed
> by Medical-Vocational Rule 202.21.[3] However, the additional
> limitations have little or no effect on the occupational base of
> unskilled light work. A finding of "not disabled" is therefore
> appropriate under the framework of this rule ....

(Dec. 10; Tr. 20) (footnote and emphasis added). Accordingly, the ALJ concluded that,

"[c]onsidering the claimant's age, education, work experience, and [RFC], there are jobs

---

[3] Rule 202.21 provides guidance for evaluating the capabilities of a younger individual
with at least a high school education and non-transferable job skills to perform "light work." 20
C.F.R. Pt. 404, Subpt. P, App. 2, § 202.21.

that exist in significant numbers in the national economy that the claimant can perform[.]" (Dec. Finding #10; Tr. 20). However, the ALJ did not attempt to link the evidence in the record to his conclusion that Boire's non-exertional limitations would not significantly erode the number of occupations for which Boire could qualify.

Additional factual details relevant to this court's analysis are described below where appropriate.

## III.  ANALYSIS

### A.    Standard of Review

Boire is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act"). The Act provides in relevant part that:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action .... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a re-hearing. The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added). The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." The [Commissioner] may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Thus, the "court's function is a narrow one limited to determining whether there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981). The Commissioner's decision must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec.'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 U.S. 1012, 108 S. Ct. 713, 98 L. Ed. 2d 663 (1988). "Even in the presence of substantial evidence, however, the Court may review conclusions of law . . . and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" Musto v. Halter, 135 F.

Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (additional citations omitted). "'Failure of the [Commissioner] to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to determine that the [Commissioner] applied the correct legal standards are grounds for reversal.'" Hannan v. Astrue, Civil Action No. 08-11480-PBS, 2009 WL 2853578, at *5 (D. Mass. Sept. 3, 2009) (slip op.) (quoting Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996)) (alterations in original). For the reasons detailed below, this court finds that the ALJ failed to provide a sufficient basis for his decision to rely on the Grid. Accordingly, this court cannot conclude that his decision to deny Boire benefits was based on substantial evidence.

**B.      Reliance on the Grid – in General**

Boire argues that the ALJ failed to meet his burden, at step five of the sequential analysis, of demonstrating that there are significant numbers of jobs in the national economy that the plaintiff is able to perform. Specifically, he contends that his "moderate" non-exertional limitations in the areas of social functioning and concentration, persistence or pace precluded the exclusive reliance on the Grid. He further contends that because the ALJ nevertheless relied on the Grid rather than a VE to determine that the plaintiff was not disabled, the decision to deny him benefits should be reversed or the matter should be remanded for further proceedings.

At step five, "the burden is on the [Commissioner] to demonstrate that there are jobs in the national economy that claimant can perform." Heggarty v. Sullivan, 947 F.2d

990, 995 (1st Cir. 1991). "The Grid is designed to enable the [Commissioner] to satisfy this burden in a 'streamlined' fashion without resorting to 'the live testimony of vocational experts.'" Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (quoting Sherwin v. Sec'y of Health & Human Servs., 685 F.2d 1, 4 (1st Cir. 1982)). It "consists of a matrix of the applicant's exertional capacity, age, education, and work experience. If the facts of the applicant's situation fit within the Grid's categories, the Grid 'directs a conclusion as to whether the individual is or is not disabled.'" Seavey, 276 F.3d at 5 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a)).

However, "the Grid is 'predicated on an individual's having an impairment which manifests itself by limitations in meeting the *strength* requirements of jobs . . . .'" Ortiz, 890 F.2d at 524 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e) (1988)) (emphasis and punctuation in original). Therefore, "[w]here a claimant has nonexertional impairments in addition to exertional limits, the Grid may not accurately reflect the availability of jobs such a claimant could perform."[4] Heggarty, 947 F.2d at 996. "The question whether the [Commissioner] may rely on the Grid in these kinds of situations depends on whether the claimant's nonexertional impairment significantly affects a

---

[4] Exertional limitations are those that "affect [an individual's] ability to meet the strength demands of jobs" including "strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. §§ 404.1569(a), 416.969(a). Nonexertional limitations are ones "which affect [an individual's] ability to meet the demands of jobs other than the strength demands[.]" 20 C.F.R. §§ 404.1569a(c), 416.969a(a). They include, but are not limited to, difficulty functioning due to nervousness, anxiety or depression, and "difficulty maintaining attention or concentrating[.]" 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

claimant's ability to perform the full range of jobs at the appropriate strength level." Id.

(quotations, citations and punctuation omitted). "If the occupational base is significantly

limited by a nonexertional impairment, the [Commissioner] may not rely on the Grid to

carry the burden of proving that there are jobs a claimant can do." Id. Ordinarily, under

such circumstances, "testimony of a vocational expert is required." Id.

On the other hand, "[i]f a non-strength impairment, even though considered

significant, has the effect only of reducing that occupational base marginally, the Grid

remains highly relevant and can be relied on exclusively to yield a finding as to

disability." Ortiz, 890 F.2d at 524. However, the ALJ "must back such a finding of

negligible effect with the evidence to substantiate it, unless the matter is self-evident."

Seavey, 276 F.3d at 7 (internal quotations and citation omitted). In this case, the ALJ did

not provide an adequate explanation for his reliance on the Grid, and it is not "self-

evident" that such reliance was appropriate.

### C.     Reliance on the Grid in the Instant Case

As detailed above, the ALJ in this case found that Boire's affective disorder was a

severe impairment that caused him to experience moderate limitations in the areas of

social functioning and concentration, persistence or pace. (See Dec. 3-5; Tr. 13-15).

"Ordinarily, . . . such a finding would render the Grid inapplicable and necessitate the use

of vocational testimony." Ortiz, 890 F.2d at 525-26. Here, however, the ALJ concluded

that Boire's mental impairments "affected only the occupational skill level at which he

could operate." See id. at 526. Specifically, the ALJ concluded that despite Boire's

moderate limitations in two areas of mental functioning, the plaintiff retained the RFC to perform unskilled light work, as long as he did not have frequent interaction with co-workers or the public. (Dec. 9; Tr. 19). Moreover, because the ALJ determined that Boire's non-exertional limitations had "little or no effect on the occupational base of unskilled light work[,]" he concluded that a finding of "not disabled" was "appropriate under the framework" of Grid Rule 202.21. (Dec. 10; Tr. 20).

In <u>Ortiz</u>, the First Circuit determined, under similar circumstances, that "such a shorthand approach is permissible, so long as the factual predicate (that claimant's [nonexertional impairment] does not interfere more than marginally with the performance of the full range of unskilled work) is amply supportable." <u>Ortiz</u>, 890 F.2d at 526. In the instant matter, the ALJ did not identify how he reached the conclusion that Boire's nonexertional mental impairments had "little or no effect on the occupational base of unskilled light work." (Dec. 10; Tr. 20). In particular, he did not describe, at any point in his analysis, how a claimant with a severe mental impairment and "moderate" limitations in social functioning and concentration, persistence or pace has nearly a full set of unskilled work available to him.

Moreover, it is not "self-evident" that Boire's moderate limitations had no more than a negligible effect on the occupational base. The First Circuit has explained that in the case of mental impairments, the inquiry into whether those impairments are "substantially consistent with the performance of the full range of unskilled work" requires "two separate determinations: (1) whether a claimant can perform close to the full range of

unskilled work, and (2) whether he can conform to the demands of a work setting, regardless of the skill level involved." Ortiz, 890 F.2d at 526. With respect to the first question, the Commissioner has described the basic mental demands of unskilled work as including "'the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting[,]'" and has indicated that "'[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.'" Id. (quoting SSR 85-15, at 94). The second inquiry, "rather than involving skill level, concerns a claimant's ability to accommodate the demands of a work setting per se[,]" including, among other things, the ability to "maintain attention and concentration for extended periods[.]" Id. at 527.

Given that the ALJ's finding of moderate limitations in the area of social functioning was based, in part, on evidence that Boire had been arrested forty-seven times, as well as incarcerated, on charges stemming mainly from violence against others, it is not apparent that Boire retained the ability to respond appropriately to supervisors and coworkers. Nor is it self-evident that Boire's "moderate" limitation in "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings[,]" (Dec. 5; Tr. 15), would not interfere significantly with his ability to accommodate the demands of a job. See Ortiz, 890 F.2d at 527 (noting, in light of claimant's "moderate" restrictions, including his diminished ability to maintain attention and concentration, "that claimant's potential

occupational base was eroded at least marginally, and possibly more so"). Thus, in the absence of an explanation as to how the evidence in the record shows that a nearly full set of unskilled light work is available to Boire, the question whether there were jobs available to the plaintiff "was more appropriately reserved for a vocational expert." Roman-Roman v. Comm'r of Soc. Sec., 114 Fed. Appx. 410, 412 (1st Cir. 2004) (per curiam) (unpub. op.). See also Ortiz, 890 F.2d at 528 (concluding that case presented "an unusual instance" where reliance on the Grid was permissible, but cautioning that "an ALJ typically should err on the side of taking vocational evidence" when nonexertional limitation is present, or at least enumerate evidentiary support "clearly and in . . . detail" when relying on Grid so as to avoid "remands for subsidiary fact-finding").

The Commissioner's arguments in support of his motion to affirm do not compel a different conclusion. As an initial matter, the Commissioner contends that Boire's moderate impairments in social functioning and concentration, persistence or pace did not constitute non-exertional limitations because the ALJ assessed those limitations at step three in the sequential analysis rather than in connection with the determination of Boire's RFC. (Def. Mem. (Docket No. 15) at 8-9). However, as detailed above, the ALJ specifically relied on Boire's "moderate" mental limitations to determine, at step four, that Boire retained the RFC to perform unskilled light work, as long as he did not have frequent interaction with co-workers or the general public. (See Dec. 9; Tr. 19). Under such circumstances, the ALJ should have provided evidentiary support for his conclusion that those limitations did not interfere more than marginally with Boire's ability to

perform the full range of unskilled light work.  See Ortiz, 890 F.2d at 526 (ALJ's decision

to incorporate effects of claimant's mental impairment into finding of RFC, and to rely on

the Grid to conclude that claimant was not disabled, was permissible, as long as

conclusion that "claimant's [mental condition] does not interfere more than marginally

with the performance of the full range of unskilled work" was "amply supportable").

Similarly, the Commissioner's argument that "a limitation to less than frequent

interaction with co-workers and the general public does not preclude an ALJ from relying

upon the GRID" also is unpersuasive.  (See Def. Mem. at 9).  The Social Security

regulations explain that "the primary work functions in the bulk of the unskilled work

relate to working with things (rather than with data or people)[.]"  20 C.F.R. Pt. 404,

Subpt. P, App. 2, § 201.00(h)(4)(i).  However, "it does not necessarily follow that

unskilled work entails little, if any, contact with supervisors or co-workers or that a

restriction in ability to work with such individuals would have no more than a negligible

effect on one's ability to perform the full range of unskilled work."  Gurney v. Astrue,

Civil No. 09-153-B-W, 2010 WL 323912, at *3 (D. Me. Jan. 20, 2010) (unpubl. op.).  As

described above, the Commissioner has expressly stated that a substantial loss of ability to

"'respond appropriately to supervision, coworkers, and usual work situations'" would

"'severely limit'" the ability to perform unskilled work.  Ortiz, 890 F.2d at 526 (quoting

SSR 85-15, at 94).  In light of  the evidence showing that Boire has been diagnosed with

antisocial behavior, and has exhibited a repeated tendency toward violence against others,

this court cannot conclude that the limitation on Boire's interactions with co-workers and

the public was so insignificant so as to permit reliance on the Grid, particularly given the plaintiff's additional "moderate" limitations in concentration, persistence or pace. <u>See</u> <u>Hannan</u>, 2009 WL 2853578, at *9-10, 12 (finding that ALJ's exclusive reliance on the Grid was not appropriate where ALJ failed to explain why claimant's moderate limitations with concentration and attention, combined with his non-negligible limitation on public interaction, had little or no effect on the occupational base of unskilled light work).

### D. <u>Nature of Relief</u>

The plaintiff requests that the court remand his case to the Commissioner for payment of benefits, or in the alternative, for further development of the record. This court finds that the circumstances of this case warrant a remand for further development of the factual record.

"[O]rdinarily the court can order the agency to provide the relief it denied only in the unusual case in which the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or to deny benefits." <u>Seavey</u>, 276 F.3d at 11. Accordingly, "a judicial award of benefits would be proper where the proof of disability is overwhelming or where the proof is very strong and there is no contrary evidence." <u>Id.</u> This is not such a case. Under the circumstances presented here, where the ALJ failed to provide the evidentiary basis for his decision to rely on the Grid rather than the testimony of a VE, the appropriate remedy is to remand the matter for further administrative action. <u>See</u> <u>Roman-Roman</u>, 114 Fed. Appx. at 412 (ordering remand where ALJ failed to provide a clear basis for concluding that claimant's mental condition had no

significant effect on the work available to him); <u>Hannan</u>, 2009 WL 2853578, at *12

(remanding for further proceedings where court could not say "that the ALJ's conclusion

that Plaintiff's capacity for the full range of unskilled light work was not significantly

compromised by her 'moderate' nonexertional limitations [was] supported by substantial

evidence in the record"). Accordingly, this court recommends that this matter be

remanded to the ALJ so that he may explain, through the testimony of a VE or use of

medical evidence, as appropriate, the relationship between Boire's mental capacity and the

work that the ALJ finds that he is capable of performing.[5] <u>See</u> <u>Roman-Roman</u>, 114 Fed.

Appx. at 412 (suggesting that on remand, ALJ obtain testimony from a VE, obtain further

medical evidence, or both, in order to "link [claimant's] mental capacity more directly to

the work he is capable of doing").

## IV.  <u>CONCLUSION</u>

For all the reasons detailed herein, this court recommends to the District Judge to

whom this case is assigned that the  "Defendant's Motion to Affirm the Commissioner's

Decision" (Docket No. 14) be DENIED, that the plaintiff's "Motion to Reverse or

Remand the Decision of the Commissioner of Social Security" (Docket No. 11) be

---

[5]  This court expresses no opinion as to the appropriate outcome of additional administrative proceedings.

ALLOWED, and that the matter be remanded to the ALJ for further proceedings consistent with this Report and Recommendation.[6]

      / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).